## B. H. PALMER & SON v. CHARLES COWIE.

1. VERDICT NOT REVERSED UNLESS CLEARLY AGAINST WEIGHT OF EVIDENCE.

   To reverse a verdict on the ground that it is against the weight of the evidence, it must be found that it was so clearly so that unbiased, unprejudiced minds could not, from the evidence adduced, have reached the conclusion which was reached by the jury.

2. TESTIMONY THAT WITNESS WAS JURYMAN IN FORMER TRIAL OF CASE, NOT COMPETENT TO ENHANCE HIS TESTIMONY.

   In an action to rescind a contract of sale and recover the purchase price, on the ground of a breach of warranty, it will be incompetent to show, for the purpose of enhancing the value of his testimony that a witness called to testify as to the chattel in question was a juryman in the trial of the same case in a justice's court.

3. TO RESCIND CONTRACT FOR BREACH OF WARRANTY, PARTIES MUST BE PLACED IN STATU QUO.

   In such case, the refusal of a charge is not erroneous, which failed to instruct the jury on the material point that in order to rescind a contract for a breach of warranty, the vendee must offer to place the vendor in *statu quo* by the return of the property in question, without injury to it, caused by his negligence.

4. CHARGE TO JURY UPON QUESTION OF WARRANTY MUST EXPLAIN LAW OF PATENT AND OBVIOUS DEFECT.

   An instruction to the jury upon the question of a warranty of soundness, etc., which fails to state that patent and obvious defects which can be discovered without the use of any particular skill or knowledge are not to be considered as a breach thereof, is erroneous.

5. TAKING OF NOTES BY JUROR, BEFORE ADMONISHMENT, NOT PREJUDICIAL MISCONDUCT.

   The taking of notes by a juror during the course of a trial, which, however, was discontinued upon admonishment by the court, is not misconduct for which a new trial will be granted.

6. HORSE DEALER, NOT A VETERINARIAN, MAY TESTIFY AS TO PATHOLOGICAL CONDITION OF HORSE.

   A person who has been in the habit of buying and selling horses all his life and has in fact made that his business, and who testified that he had seen hundreds of sweenied horses, although not a veterinarian, will be permitted to give his opinion as to the soundness of a horse alleged to have been sweenied.

7. EXCLUSION OF TESTIMONY AS TO PURPOSE OF EXAMINATION OF CHATTEL BY WITNESS, NOT ERROR.

   The exclusion of testimony by a witness called to testify as to the soundness of a horse, concerning his purpose in making the examination, is not erroneous, as it is the result of his examination and not the purpose of it, that is material to the issue.

ERROR to Lorain common pleas court.

Lorain County.

**D. J. Nye** and **C. J. Kenny,** for plaintiffs in error.
**Lee Stroup,** for defendant in error.

MARVIN, J.

Suit was brought by Palmer & Son against Charles Cowie before a justice of the peace, and thereafter appealed to and tried in the court of common pleas, where it resulted in a verdict and judgment for the defendant. By proper proceedings the case is now here for review upon petition in error filed by the plaintiffs below. A bill of exceptions is filed in this court containing all the evidence given or offered at the trial, and it is urged that errors prejudicial to the plaintiffs are manifest upon this record.

The action was based upon the claim that on May 9, 1904, plaintiffs purchased a mare from defendant, and paid for her the agreed price of $145; that at the time of such purchase the defendant warranted her to be sound in every way; by reason of which warranty, plaintiffs were induced to make the purchase and pay the money; that the mare was in fact unsound when such purchase was made, in that she was hoofbound and was badly sweenied in both shoulders, and upon being shod the same day became very lame on account of such unsoundness; that the plaintiffs within four days of such purchase returned the mare to the defendant and tendered her to him, demanding a return of the money; that the defendant refused the tender and refused to return the money; that plaintiffs were put to an expense of $30 in keeping and caring for the mare. The prayer is for judgment for the said purchase price and for said $30 so expended on the mare.

For answer the defendant admitted that he sold the mare to plaintiffs for $145 and denies all the other allegations of the petition.

It will be noticed that the plaintiffs based their action upon the rescission of the contract and not upon a claim for damages for breach of warranty. Upon the facts stated they might have sued either way, that is, they might have retained the mare and sued for the breach or sued upon rescission as they did. Had they sued for the breach, they would of course have made the additional averment, that they were damaged in some certain amount by reason of such breach.

One of the errors complained of is, that the verdict is against the weight of, and contrary to, the evidence. To reverse on this ground, we must find that the verdict was *clearly* against the weight of the evidence. So that unbiased, unprejudiced minds could not, from the evidence, have reached the conclusion which was reached by the jury.

It is not claimed by the defendant that he did not practically warrant the mare to be sound. He says in his testimony that he told Pal-

Palmer v. Cowie.

mer at the time of the purchase, "That the mare is sound from anything I know. I raised her, and it seems I ought to know."

Again, he testifies that Palmer asked him if the mare was ever sweenied, and he answered, "No, sir, them shoulders are the same as they always were, from a colt."

The defendant, however, claims that what he said about her was true, and on this issue the jury must have found with him, unless they found that whatever unsoundness there was, was so patent that, no representation about it, could have misled anyone.

There is evidence tending to show that there was a peculiarity about the shoulders of this mare that was noticeable and that attention was called to this at the time of the purchase, when Cowie declared that the mare was not sweenied.

There is evidence tending to show that the mare was sweenied at the time she was sold, and there is evidence also tending to show she was not.

Fred Rowland, a witness for the defendant, though not a veterinary, shows that he has bought and sold and examined many horses—he says he has purchased and sold at least one hundred and fifty horses within the last five years. He examined the mare at the blacksmith shop on the day of the sale; he says her shoulders were a trifle narrow, but she was not sweenied.

Orrin Babcock looked the mare over a few days before the sale and noticed her shoulders were thin, but says she was not sweenied.

Stanley Wilcox examined the mare two days before the sale,—the sale having been on Monday, he examined her on the Saturday before,— and noticed the shoulders, but says she was not sweenied. Other witnesses gave similar testimony; one Snyder and William Hart testified to substantially the same thing, upon the examination made by each of them.

All this is enough to show that the jury had evidence on which they might, without being biased or prejudiced, but in the exercise of sound judgment, have reached the conclusion that the mare was not sweenied.

It may be, that the evidence of the unsoundness would seem from a reading of the record to be weightier than this, but it is not such as to justify us in saying that the jury, who saw the witnesses and had full opportunity to judge of their testimony, were clearly wrong, and the judgment will not be reversed on the weight of the evidence.

It is further urged that the court erred in certain rulings made at the trial upon the admission of evidence.

Lorain County.

On page 5 of the bill of exceptions a ruling is found, which was made when Stewart McConnall was upon the stand as a witness.

It appears that after the trial before the justice of the peace the mare was turned into the pasture of this witness. The witness in answer to a question as to what became of the mare after the trial, answered that she was turned into his pasture, where she remained until she died. The court told the jury to exclude from their consideration the statement that the mare died. This was nowise prejudicial to the plaintiffs, unless they had a right to show, as a part of their case, that the mare was dead. And in order to make it of value to them they must have been able to show that the mare died by reason of her unsoundness that existed at the time of the purchase; and if they might show that, then the defendant would have had a right to show that she died from some neglect of the plaintiffs after the sale, and there would have been raised an issue of what the treatment of the mare was all the time, and what sickness, if any, she had after the sale. There was no error in excluding from the jury the statement that the mare died.

Exception is taken to the exclusion by the court of the statement of W. M. Murray and others, that they were members of the jury which tried this case before the justice of the peace. Murray in testifying in the common pleas court told of an examination he made of the mare on the day of the trial before the justice of the peace, and then, to give weight to his testimony, it was sought to show that he was a juror. That is true as to others who were called and who made examinations of the mare on the day of the trial before the justice of the peace. It was certainly not a matter which the plaintiff had a right to show as giving additional weight to the testimony of these witnesses, that they were jurors on the trial before the justice of the peace. They were here; they testified to their examination, and it ought not to add to, or detract from, the weight of that evidence, that they were jurors before the justice of the peace. Evidently the object was to impress the jury with the fact, that the result, as the transcript shows before the justice of the peace, was in favor of the plaintiffs, and that these jurors were so impressed with the unsoundness of the mare that they returned a verdict showing that they thought her to be unsound. There was no error in the ruling on this.

It is claimed there was error because John Snyder was permitted to give his opinion as to whether this mare was sound. He had examined her, he is not a veterinary, but he says he is in the horse business and has been all his life; has seen hundreds of sweenied horses; that his business is buying and selling horses. He described to some

Palmer v. Cowie.

extent the appearance of the shoulders and hoofs of this mare and was permitted to give his opinion as to whether she was sound or not. We think there was no error in the ruling on that. It is true he was not a veterinary, but he had, as appears from his testimony, a greater knowledge than the average man has of the condition of horses; his long experience in dealing in horses and examining them.

When William Hart was upon the stand he was asked to describe the mare's hoofs, and he answered she had a nice round hoof. This appears on page 200 of the bill of exceptions. It was objected to and overruled. (The record is a little peculiar.) The witness said, "I cleaned her hoofs out, and I think she had a nice round hoof." Objected to by counsel for plaintiff. No ruling. Without stating what you think,—eliminate the words "I think,"—you may describe the hoof. A. "She had a nice round foot." Objected to by counsel for plaintiffs, which objection the court overruled, to which ruling the plaintiffs then and there excepted. I suppose, however, and we will treat it as though the objection had been made to the question put, "Without stating what you think,—eliminate the words 'I think,'— you may describe the hoof." If we treat it as an objection to that question, it was properly overruled. However, no ruling was made upon it until the answer is made, "She had a nice round foot."

Certainly the better way to have got at that, if it was thought that the answer was incompetent, would have been to ask to have it taken from the jury, but treating the language here "objected to by counsel for plaintiffs," as meaning that it is desired to have that taken from the jury, we think there was no error in refusing so to rule. Of course without the word "nice" there could be no objection to this answer, "She had a round foot." Now, is it enough, to make that answer objectionable, that the word "nice" is introduced? We think not. There was no error in the ruling on this.

Charles Cowie on cross-examination, as appears by the bill of exceptions at page 154, described the appearance of the mare on the day of the trial before the justice of the peace, and said he did not think she was then sweenied. Charles Cowie is the defendant in the action. He was then asked if he did not see every one of the jury examine her on that day, and an objection was made and the court sustained the objection. He was permitted to testify immediately following this that he saw others than himself examine her, and the only possible object it seems to us, that the plaintiffs could have had in asking that that question be answered, was to impress the jury which was trying the case in the common pleas court that the jury which tried the case be-

fore the justice of the peace saw the mare and examined her, and they found for the plaintiffs, and then reason that it must be, that their examination was such as to justify that verdict. These jurors all might have been called as witnesses, and several of them were as a matter of fact, because they offered to show,—the plaintiffs did,— that they were jurors and the fact that they examined the mare,—that the witnesses did,—and that these witnesses saw various men other than themselves examine her on that day, was before the jury, and there was no error in the sustaining of the objection to this question.

William Hart being on the stand, was answering questions, and on page 202 of the record he was asked this question:—It should be said he had testified that shortly before the mare was sold to the plaintiffs, he had examined the mare, and he was asked this question:— "State whether or not you were looking at the horse with a view of matching it with another horse which you had?" To which question the plaintiffs objected, which objection the court overruled, to which ruling the plaintiffs then and there excepted. He said, "I was looking at the mare with the intentions of,"— He got that far when counsel for the plaintiff objected,—and without the answer being completed at all, so that up to this point it has not appeared what he was examining the horse for, this question was asked, "Can you answer that, yes or no?" and he said "Yes." "Now answer it, Were you or were you not?" "Yes." That is, he is now permitted to say that he was examining the mare with a view to matching her with another horse that he had; so that how the plaintiff's can complain that he was not permitted to tell, and indeed what possible difference it could make to anybody what he was examining her for, we cannot see. It is the result of the examination that is material and not the purpose of it. The purpose of it might show—that is, if he was examining her with a view to purchasing her, it might carry with it an idea he made a careful examination; but he has said he did, somewhat careful at least. There was no error in the ruling on this.

At page 169 of the bill of exceptions it appears that the court observed that a juror was taking notes, apparently of the evidence which was being given, and the court said, "I notice gentlemen of the jury, that some of you have been taking notes of the testimony. The theory of the law is, that unless you all take notes of the testimony none of you should, so that some of the testimony will not be unduly emphasized in the jury room, and I will ask you to discontinue that."

At page 272 there is an affidavit of Mr. Kenny, who was counsel in the case, that he observed during the trial, that a juror, whose name

Palmer v. Cowie.

he gives, was taking notes of the testimony, evidently referring to the same thing to which attention is called by the court at page 169. There is nothing to indicate that, after the court said that, anybody took any notes, nothing to show that the juror retained the notes; but he did take down something on paper, and the witness says, notes of the testimony, which we may assume to be true, though I doubt if the witness knew for certain that that was it. But is that misconduct on the part of a juror for which the verdict of the jury should be set aside and the judgment reversed?

Judge Adams took occasion to say, in *Clev. C. C. & St. L. Ry.* v. *Ullom,* 11 Circ. Dec. 321 (20 R. 512),—what he said appears on page 328 of the report,—that he entertained grave doubt as to whether a juror is guilty of misconduct by taking notes. Speaking for myself alone, I entertain no grave doubt about it. Unless a juror is cautioned not to take notes I know of no rule, nor can I think of any principle, that would make it misconduct on the part of a juror to take notes, any more than on the part of a judge before whom a trial upon facts is being heard, and especially where there are several judges.

It is true that a juror might, by taking notes, have more information about the case in the jury room than a juror who did not take notes. It is equally true that there is a great difference in the intelligence of jurors. It is true that there is a difference in the memory, power of memory of jurors and of judges, and it is possible that it gives one juror an undue influence with his fellow jurors; but certainly until a caution is given, it would be to me a very remarkable thing that a juror should be said to be guilty of misconduct because he took down some notes of the evidence that was being introduced. There was no error in the court refusing the motion for a new trial upon that ground, misconduct of the jury in taking notes.

It is complained, however, that the court erred.

1. In refusing to give to the jury in charge certain propositions which the plaintiffs requested, and the first of these propositions is this:

"If the jury find from the evidence given in this case that the defendant, Charles Cowie, warranted the mare to be sound and all right, and the jury find that the mare was not sound and all right, then the plaintiffs had a right to return the mare to the defendant and demand the return of the money that they had paid for the mare."

That language omits, as we think, a material proposition. In one of the cases cited by counsel for plaintiffs in error here, *Crooks* v. *Eldridge,* 64 Ohio St. 195 [60 N. E. Rep. 203], it is said, that if the prop-

erty is returned so as to put the defendant in *statu quo,* there being a breach of the warranty, the party returning within a reasonable time the property in such wise as to put the vendor of the property in *statu quo,* he may do that and recover the purchase money. But that is omitted here.. If this proposition had been given, the jury might have found that the mare was returned, that by reason of ill treatment of the mare by the purchaser, she had been greatly injured and although she was sweenied at the time, they had a right to return her with the additional injury which they had put upon her by overdriving her or the like, and still have a right to rescind the contract. The court was right in not giving that in charge.

2. The second request is the same.

3. The third request reads:

"If the jury find from the evidence given in this case that the defendant, when the plaintiff, James Palmer, asked him about the mare's shoulders told him that the shoulders were all right, that she was born that way; and you further find that the mare was in fact sweenied at the time of the sale; the warranty of the soundness of the mare would cover the condition of the shoulders."

That would be true,—that proposition of law would be correct,— if it had one additional qualification, to wit: That the unsoundness was such that it was not patent to whoever looked at the mare.

There was evidence tending to show that this mare's shoulders were peculiar, and that attention was called to that, by not only parties at the time of the sale to the plaintiffs here, but at other times.

Now it is claimed on the part of the defendant, that whatever unsoundness there was—he says the mare was not unsound, there was no sweeny—but whatever there was about the mare that wasn't all right, was patent to everybody who looked at her. And the defendant introduced evidence tending to show that the peculiarity about these shoulders was noticeable to those who looked at her. Now this should have been qualified, that if the mare was warranted, if she was unsound, and that unsoundness was not patent so as to be noticeable by those who examined her or looked at her, then the warranty would cover, and they would be entitled to recover for its breach.

I read from Swan's Treatise (18 ed.) 830:

"A warranty of the soundness of a horse, or other property, extends to every kind of unsoundness, known and unknown to the seller. If, however, the buyer examines the property at the time of the sale, and it is perfectly apparent that it has some particular defect, which can be discerned without requiring the use of any particular skill in

Palmer v. Cowie.

the qualities of the property, as the loss of the ear of a horse, it will be presumed that the parties did not understand such defect as coming within the warranty. If, however, the horse, or other property, has a defect which is not plain and obvious, except to those who are skilled in the quality of the particular article, it cannot be claimed by the defendant that the defect was too plain and obvious to come within the warranty.''

There was no error in the refusal to give the charge as requested in number three.

The court properly stated the questions to be considered by the jury in the outset of his charge after stating the issues, beginning at page 259 of the bill, ''Was the horse at the time of the sale unsound in the particulars complained of in the petition, or was it thereafter injured by the plaintiffs? Were the defects complained of in the petition known to the plaintiffs at the time of the purchase, or were they plain and obvious to the senses, and such as to require no skill to detect, and if so, were they included in and covered by the warranty'' plainly implying that even if they were obvious they might be included in the warranty.

Then he says, ''Were the defects complained of in the petition included in such warranty?'' ''A general warranty does not usually extend to defects which are known to the buyer, or to defects which are plain and obvious to the senses and which it requires no skill to detect,'' following the law as laid down in Swan's Treatise which has been read.

Without following this charge through all of the way, we have found nothing in the charge which would warrant a reversal of the judgment. We think there was no language in the charge calculated to mislead the jury; but that it was calculated to call their attention to exactly the questions they should pass upon.

The court did say once or twice in the charge, ''If you find that on the day of the sale'' certain things existed—. It was suggested to the court that that might be erroneous, because there might something happen to the mare in the latter part of that day when she was being driven to Ashland, as she was in the afternoon, and the court corrected that, and said, ''When I have used the term 'on the day of the sale' I mean at the time of the sale.'' We think the charge of the court was proper. There is no error in the record which would justify a reversal, and the judgment is affirmed.

**Winch** and **Henry, JJ.,** concur.